## WILLIAMS v. SOUTHERN RY.

1. EVIDENCE—RAILROADS—CROSSINGS.—In an action for negligent killing by a railroad corporation at a crossing, defendant alleging negligence and contributory negligence of deceased, it is proper to rule out evidence as to other boys playing on the crossing.

2. EVIDENCE—RES GESTAE.—DECLARATIONS of party injured as soon after injury as those standing near, who saw it, could run to him, properly admitted as part of *res gestae.*

3. NEGLIGENT KILLING.—CHARGE complained of as to the proof necessary to warrant the jury in finding that death was caused by negligence of another, held not to be misleading so as to cause the jury to infer that liability for the death arose, in case the death was caused by the accident rendering the injured less liable to withstand the ravages of disease.

24—68

Before BUCHANAN, J., Union, October term, 1902.    Affirmed.

Action by Rosa Williams, as administratrix of Wallace Williams, against Southern Railway Co.    From judgment for plaintiff, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *As to liability for wrongful death:* Code, 1902, 2851; 141 Ind., 443; 25 Ohio St., 629; 87 Mo., 422; 3 Wood on R. R., 1826; Tiffany Death by Wrongful Act, sec. 32; Suth. on Stat. Con., sec. 371; 65 S. C., 234.    *As to the motion for a new trial:* 13 Rich., 59; 19 S. C., 581.

*Messrs. V. E. DePass* and *W. W. Dixon,* contra.    *Mr. DePass* cites: *As to declarations as res gestae:* 10 Am. St. R., 300; 13 Am. St. R., 453.    *As to liability for wrongful death:* 26 S. R., 349; 8 Hun., 501; 96 Ind., 346; 57 Tex., 83.

March 30, 1904.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    This action, under Lord Campbell's Act, was brought to recover $1,990 damages from the defendant, alleging that, through the negligence of the defendant, one Wallace Williams, a lad of fourteen years, had his leg cut off by one of the defendant's trains, on the 16th April, 1902, and died therefrom on the 3d July, 1902.    That the negligence of the defendant consisted in failing to blow the whistle or ring the bell of the engine, drawing the train, as required by law, and also running at a reckless speed across a street crossing in the town of Union, S. C.    This was all denied by the defendant, who also alleged that if it was guilty of negligence in failing to ring its bell or to sound the whistle on the engine, that the intestate was guilty of contributory negligence by trying to get on its train while in motion, and by failing to get on its train, fell so near or on

its track, that his foot was run over by a wheel of one of its freight cars.

The action came on for trial before his Honor, O. W. Buchanan, as Circuit Judge, and a jury at the October term, 1902, of the Court of Common Pleas for Union County. During the trial the Circuit Judge admitted some testimony, and refused to admit some testimony which the defendant alleges was erroneous; and also alleges error in his charge to the jury, in modifying defendant's sixth request to charge. The jury found a verdict for plaintiff of $400. The defendant then moved on the minutes of the Court for a new trial, which motion was refused by the Circuit Judge. After entry of judgment upon the verdict, the defendant appealed therefrom upon the following grounds:

"1. In refusing to allow the witness, Mrs. Hawkins, to be examined as to the frequency of boys running about and playing at the crossing, where the injury occurred, during the time trains were passing there, and in sustaining the objection of plaintiff's counsel to such testimony. It being respectfully submitted that such testimony was both competent and relevant to the issues involved in this case.

"2. In permitting the witnesses, Gossett, Ford and Rochell, to testify and state the declarations of Wallace Williams, the injured boy, on the ground they were a part of the *res gestae;* whereas, it is respectfully submitted, his Honor should have held that these declarations were hearsay and were not a part of the *res gestae,* and should have excluded them from the evidence.

"3. In not allowing the witness, Jacob Rice, to testify to the fact that the crossing, where the injury occurred, was a common gathering place and playground for little negro boys; it being respectfully submitted that this evidence was relevant and competent on the question of contributory negligence, and also as to whether the boy may not have been a trespasser.

"4. In not charging the defendant's sixth request without modification, to wit: 'Where one sues for damages on

account of injuries causing death, he must prove that the
deceased died from the injuries alleged;' and in modifying
this request by instructing the jury that they should consider
this in the light of and in connection with section 2139, vol.
1, of the Code of 1892.    The error being, it is respectfully
submitted: (1) That his Honor, in the light of the testimony
of the physicians in this case, erred, in that this modifica-
tion was calculated to lead the jury to believe that if one is
injured, and this injury weakens his constitution and renders
him less able to resist disease than he would be if in sound
health, that his heirs could recover damages from the persons
inflicting the injury, if some disease not superinduced by the
injury attacks the injured person and causes his death;
whereas, it is respectfully submitted, that if one is injured
in such manner so as to weaken his constitution, even if this
does render him less able to resist disease than he would be if
in sound health, then that the person inflicting the injury is
not liable for the death of the injured person, if he is attacked
by and dies from a disease not superinduced by such injury.
(2) That his Honor's modification was calculated to lead
the jury to conclude, that under Lord Campbell's Act, where
one is injured and death ensues from some disease, whether
superinduced or not by the injury, that because the system
was weakened, those named in the act would have a cause
of action against the one inflicting the injury; whereas, his
Honor should have held that the injury must cause death, or
at least be the proximate cause thereof, before a cause of
action can exist under the act.    (3) That by this modifica-
tion his Honor took away from the jury the question of the
proximate cause of the death, and led the jury to believe that
if one is injured at a highway crossing, and the defendant
failed to ring its bell or sound its whistle, as the statute
required, and this injury weakened his constitution and he
was afterwards attacked by disease, whether superinduced by
the injury or not, from which disease he died, then that his
heirs could recover of the defendant, if the injury contrib-
uted to the death in any degree whatever; whereas, it is

respectfully submitted, that under the law applicable to causes of action for the beneficiaries, where an injury causes death, and in the light of the testimony in this case, the injury must at least have contributed as a proximate cause to the death before a recovery could be had.

"5. Because his Honor erred in refusing the motion for a new trial, the error being that his Honor erred in holding that he could not interfere with the determination of the jury where there was any evidence on the issue involved; whereas, his Honor should have held that the verdict of the jury, in this case, was against the great weight of the evidence. a. As to whether the injury was caused by the engine striking the boy on the street as he was attempting to cross it, or by the boy attempting to get on a moving car after the engine had already crossed the street. b. As to whether this alleged injury caused the death of the boy. That his Honor should have used his discretion and should have passed on the question whether or not the verdict was against the greater weight of the evidence."

We will now examine the exceptions in our own order:

1. We do not think there was error when the Circuit Judge refused to allow Mrs. Hawkins to testify in this case, that little boys frequently ran about and played on the crossing at Wallace street, where the accident occurred, when she had testified that she never saw Wallace Williams on such crossing. Her proposed testimony was not only immaterial to any issues involved in this case, but was calculated to prejudice plaintiff's case. This exception is overruled.

2. We think the Circuit Judge committed no error when he allowed Gossett, Ford and Rochelle to testify as to what Wallace Williams told them as to the manner in which he was injured. One or two of the witnesses saw Wallace Williams when he was struck by the engine; they rushed to his help, and he then and there declared to them how he was hurt. This Court has several times held that the declaration need not be made coincident

with the injury, but near about it, so nearly that it is not likely that the declaration could be manufactured. The very recent case of the *State* v. *McDaniel,* MSS. Decision, establishes the foregoing proposition as to the admissibility of declarations as a part of the *res gestae.* *Leahey* v. *Cass Avenue and Fair Grounds Railway,* 10 Am. St. Reports, p. 300; also, *Wormsdorf* v. *Detroit City Ry. Co.,* 13 Am. St. Reports, 453. This exception is overruled.

3. The witness, Mr. Jacob Rice, could not testify, against the objection of plaintiff, that little boys used the crossing where the accident occurred as a playground. What concern was it who played there, if plaintiff *did not.* As remarked in disposing of first exception, such testimony was not only immaterial to the issues here involved, but would have been prejudicial to the case. This exception is overruled.

4. We will now consider the fourth exception. The defendant requested the presiding Judge to charge the jury as follows: "6. Where one sues for damages on account of injuries causing death, he must prove that the deceased died from the injuries alleged. I have just read you that statute which says 'contributed to the injury,' and I charge you that in the light of and in connection with the section I have just read to you. 7. A jury ought not to find that one died from injuries from mere probabilities. It should be proven by the preponderance of the evidence. I charge you that."

It will be seen that the presiding Judge made the charge, but qualified it by referring to that statute which says "contributed to the injury." But it does seem to us that when the Circuit Judge charged the 7th request, which we reproduce herein, he cleared away any possible doubt. We have examined the whole charge of the Circuit Judge and find it admirable in every respect. We do not think it was any business of the Circuit Judge to canvass the opinions testified to by several physicians. It would have been at variance with our State Constitution, if he had done so. The jury heard all the testimony. They remembered

that the uncontradicted testimony of the plaintiff was that her intestate was never sick a day since he was a baby. That the testimony of the defendant's own witness, Dr. S. S. Lenord, stated that there was no sign of anything, but the wound made by the cutting off his foot by the railway on the 16th April, 1902, when he went to call on the intestate. He was the physician employed by the railway itself; he used the iodoform after which the "rash," as it was called, first made its appearance. Both he and his son testified that the wound made by the operation in cutting off the leg of Wallace, had never entirely healed, and the other physicians say that it was never entirely healed. It is true, he fell from his crutches and opened the wound again. It is true, that he had a spell of malarial fever, but it was stated that the fever had subsided. The doctors all united in saying that they expected Wallace to recover, but he did not; he died a few days after Dr. Culp saw him. We ought to have stated that the doctors never did undertake to say, with any certainty, as to what killed Wallace. They all admitted that the wound inflicted by the railway company had its effect in reducing Wallace's power of resistance to disease. The jury heard, as before remarked, the *uncontradicted testimony,* that Wallace had never been sick in his life; that he was stricken down by this railway company on the 16th April, 1902; and that he died on 3d July, 1902; never having recovered from this wound made by the railway company. They had the right and it was their duty to pass upon all the testimony in the case. The Circuit Judge impressed upon their minds, that they ought not to find that one died from injuries from *mere probabilities* (italics ours). Indeed, it was the duty of the plaintiff *to prove* that the wounded boy died from the injuries alleged.

We think that the charge of the Circuit Judge could not mislead the jury. The parties have had a fair trial. It is to the interest of the people of this commonwealth that when a fair trial has been had in a cause, that should be the end of it.

It is the judgment of this Court, that the judgment of the Circuit Court be, and it is hereby, affirmed.